[Civ. No. 12184. First Dist., Div. Two. Nov. 30, 1942.]

Estate of ORVILLA F. DAVIS, Deceased. JOHN J. DAVIS et al., Appellants, v. RICHARD M. LYMAN, JR., Respondent.

Rode, Burnhill & Rode, Decoto, Hardin & Wortz, Robert E. Hatch, Carl Conradi, Jr., and Charles H. McDonald for Appellants.

Raymond D. Williamson for Respondent.

DOOLING, J. pro tem.—Orvilla F. Davis died intestate leaving two daughters, Eva Davis Kerr and Irene Davis, and a husband, David A. Davis, who had apparently been divorced from her many years before by a Nevada court. Four petitions for letters of administration of her estate were filed: One by Sheldon Brandenburger as nominee of Eva Davis Kerr; one by Richard M. Lyman, Jr., also as nominee of the same daughter; one by John J. Davis as guardian of Irene Davis, who is an incompetent; and the fourth by David A. Davis as surviving husband. Eva Davis Kerr had first nominated Brandenburger in writing and later had executed another writing revoking the nomination of Brandenburger and nominating Lyman.

The court after a hearing made an order appointing Lyman administrator and from this order the three other petitioners appeal. ■ Appellants Brandenburger and David A. Davis urge on appeal that they were denied an opportunity to present any evidence in support of their respective petitions. This claim is based upon the fact that on the hearing they both joined with appellant John J. Davis in asserting that he was entitled to the appointment, and they now argue that they believed that if the court decided not to appoint John J. Davis they would be given an opportunity to present evidence in support of their respective petitions at a later date. As we read the record it does not support them in this contention. At the beginning of the hearing Mr. Hatch, representing David A. Davis, made the following statement:

"But I am the fourth in line here, so far as proceeding is concerned, and if the Court agrees that one of the others is entitled to Letters, I will not press my application."

During the hearing Mr. Wortz, representing the petitioner Brandenburger, stated to the court:

"And so far as my client is concerned, inasmuch as Mrs. Kerr has already filed a renunciation of her nomination of Mr. Brandenburger, I am in a position of having a client without any right, so that we, too, yield in favor of Mr. John Davis."

At the close of the evidence in support of the petitions of John J. Davis and Lyman the court said: "Well, let the matter be submitted. I want to look up some of the decisions on this matter."

Neither counsel for Brandenburger nor David A. Davis objected to the submission and neither requested the right to produce evidence or that the hearing of their petitions be continued to a later date, although it was clear from what had preceded the order of submission that the court was uncertain as to whether John J. Davis or Lyman should receive the appointment. Appellants cannot blow cold in the trial court and hot on appeal. Having led the trial court to believe that they were satisfied to submit their petitions without evidence they are in no position to complain now that the trial court should have given them an opportunity to be heard.

Upon the hearing Mrs. Kerr testified that she desired to withdraw her nomination of Lyman in favor of the appointment of appellant John J. Davis. Lyman urged an estoppel against Mrs. Kerr based upon his expenditure of time and money in investigating the supposed divorce of David A. Davis from the decedent and other matters. It is now argued by appellants that an heir cannot be estopped to withdraw the nomination of another to act as administrator. The rule is thus stated in 11a Cal.Jur. 339-40:

"The request and nomination are not an absolute transfer of right and can be retracted or revoked by the nominator at any time before the hearing upon the application based thereon, provided the nominator be not estopped to withdraw such nomination because, for instance, the nominee has gone to the trouble and expense of seeking the appointment on the faith of the nomination, and no reason for revocation is shown."

The earlier cases are clear to the effect that a nominator may be estopped to withdraw the nomination. (*Estate of Kirtlan,* 16 Cal. 161; *Estate of Silvar,* 5 Cal. Unrep. 494 [46 P. 296]; *Estate of Bedell,* 97 Cal. 339 [32 P. 323].) Appellants say that these cases have been overruled on this point by *Estate of Lowe,* 178 Cal. 111 [172 P. 583], and *Estate of Olcese,* 210 Cal. 262 [291 P. 193]. An examination of these cases does not bear out this claim. In *Estate of Lowe, supra,* the court held no more on the question of estoppel than

that the evidence did not support the finding as the following quotation from page 112 makes clear:

"There is a further finding to the effect that the respondents had gone to expense and trouble on the faith of the widow's request. This is, in effect, a finding of estoppel. We think the appellant is right in her claim that the evidence does not support the finding last mentioned."

This is not a repudiation of the rule of estoppel in such cases, but only a holding that the evidence did not support a finding of estoppel in the particular case.

In *Estate of Olcese, supra,* the court said at page 270: "A request for appointment of a nominee does not estop the person entitled from revoking the request."

This falls short of stating that the nominator may not be estopped. It goes no further than to state, what was always the rule, that the mere nomination alone does not estop the nominator from revoking. In *Estate of Olcese, supra,* the court cites with approval *Estate of Shiels,* 120 Cal. 347 [52 P. 808]. In the latter case at page 348 the court thus announced the rule:

"The mere fact of requesting the appointment would not, however, as a matter of law, estop her from revoking her request, and, whether there were attendant circumstances which would authorize the court to give her request greater or less consideration than her subsequent withdrawal thereof, was a matter for the determination of the court in its discretion."

We conclude that a nominator may be held in the sound discretion of the probate court estopped to withdraw the nomination of another to be administrator if the nominee has acted to his detriment in reliance upon the nomination.

█ The nominee of a daughter, however, falls into a class lower than the guardian of a daughter. This follows from a consideration of Probate Code, sections 423 and 426 and the decisions in *Estate of Olcese, supra,* and *Estate of Turner,* 143 Cal. 438 [77 P. 144].

Probate Code, section 423, provides in part: "If the person making the request is a child, parent, brother or sister of the decedent, the nominee shall have priority next after those in the class of the person making the request." This has the effect of placing any member of the class ahead of the nominee of a member of the same class. (*Estate of Olcese, supra.*)

Probate Code, section 426, reads: "If a person otherwise

entitled to administer is a minor or an incompetent person, letters may be granted to his or her guardian, or any other person entitled to letters, in the discretion of the court.''

In *Estate of Turner, supra,* the court considered the effect of the language ''or any other person entitled to letters'' in this section and held that it meant any other person in the same class as the minor or incompetent, so that the guardian of a minor or incompetent is to be considered a member of the class to which his ward belongs, and ahead of all lower classes, in determining his right to letters.

It follows that John J. Davis as guardian of one daughter was superior to the nominee of the other daughter in the right to have letters issued.

Respondent Lyman, however, attempts to support his appointment over John J. Davis on the theory that the probate court found John J. Davis unfitted for the duties of administrator. The evidence developed that Davis was appointed guardian of the incompetent in 1920, that her estate at that time amounted to $700 in cash, that he had never rendered an account of his guardianship, did not know what the balance of the estate amounted to and ''I have got what is coming to her in a little box; I keep it separate.''

Probate Code, section 420, provides that, ''No person is competent to serve as an administrator . . . who has not the qualifications required of an executor . . . '' and Probate Code, section 401, states that, ''No person is competent to serve as an executor . . . who is . . . adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity.''

Under the facts recited the court might have been justified in adjudging appellant, John J. Davis, incompetent to execute the duties of the trust by reason of improvidence. Keeping the money of his ward in a little box for over twenty years with no earnings and no accounting would in our judgment, in the absence of justification or excuse, support a finding of improvidence. But section 401, *supra,* requires that the person disqualified for incompetence be ''adjudged by the court incompetent.'' The court made no adjudication of appellant John J. Davis' incompetency. Its order was simply one appointing respondent Lyman administrator. In the absence of an express adjudication of Davis' incompetency the order appointing Lyman cannot stand.

The order appealed from is reversed and after retrial the probate court is directed to make express findings on the issues of incompetency and estoppel herein discussed.

Nourse, P. J., and Spence, J., concurred.